UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   07-14347-Civ-MARTINEZ
MAGISTRATE P. A. WHITE

JIMMY GREEN,                           :

        Plaintiff,              :

v.                                      :                    <u>REPORT OF</u>
                                                      <u>MAGISTRATE JUDGE</u>
DOROTHY REED, et al.,                   :

        Defendants.             :
_____

## I.   <u>INTRODUCTION</u>

In October 2007, plaintiff Jimmy Green, a state prisoner at Columbia C.I., filed a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983 in the Middle District of Florida, alleging he was denied adequate medical care while earlier confined at Highlands County Jail ("HCJ") in March 2007. (Complaint, DE#6-2). On October 31, 2007, the case was transferred to this District. (Order, DE#6).

After a Preliminary Report and Order of partial dismissal (DE#s 10, 13), the case remained pending solely against two nurses who were employed at the HCJ at the time of the events alleged: Dorothy Reed, R.N., and Mike Harvey, L.P.N. **This Cause is before the Court upon: 1) plaintiff's motion for summary judgment (DE#57)** with his affidavit, and with a sworn Memo of Law and Statement of Facts (DE#58); **and upon: 2) a joint cross-motion for summary judgment by the defendants Reed and Harvey (DE#59),** with supporting Exhibits "A" to "K" (at DE#s 59-2 to 59-12, and DE#60), as to which plaintiff Green was advised of his right to respond.[1] The

_____

[1] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interroga-
> tories, and admissions on file, together with the
> affidavits, if any, show that there is no genuine issue
> as to any material fact, and that the moving party is
> entitled to judgment as a matter of law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to

defendants filed a Memo (DE#63) with exhibits (DE#s 63-2 and 63-3) in opposition to plaintiff's motion; and plaintiff filed a Response (DE#66) opposing defendants' cross-motion.

## II.   **THE PLAINTIFF'S ALLEGATIONS**

---

        establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

    Thus, in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>).

    Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir.1987), an Order of Instructions (DE# 67) was entered, informing plaintiff Green as a *pro se* litigant, of his right to respond to the defendants' cross-motion for summary judgment. The Order (DE# 67) specifically instructed Green regarding the requirements under <u>Fed.R.Civ.P.</u> 56 for a proper response to such a motion.

As discussed in the Preliminary Report, the gravamen of plaintiff Green's complaint against nurses Reed and Harvey is that they denied him pain medication when he states he needed it.

Green asserts that although a jail doctor had prescribed pain medication at 12 hour intervals as part of a course of treatment for a serious foot condition, it was ineffective in controlling his discomfort as the underlying condition worsened. Green claims that when he asked for additional medication, his requests were ignored by the nurses on different days, and as a result he was left to suffer for hours in excruciating pain following his requests.

### III.  DISCUSSION

### A.  UNIDENTIFIED DEFENDANTS

In the initial Order of Instructions (DE# 4) Bruce was explicitly informed of his duty, as plaintiff, to give the full names, titles, if any, and addresses of all designated defendants, so that service of process, if appropriate, could be accomplished. (DE# 4, ¶2). The Order explicitly warned that if service could not be accomplished upon a defendant due to lack of information from the plaintiff, the case would be dismissed as to that defendant. (Id.). Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, for dismissal of a complaint that has not been served within 120 days of its filing. This case has reached the stage of summary judgment, and unnamed personnel alluded to by the plaintiff in his December 2007 complaint remain unidentified. It appears that as to those unnamed persons, who could not be served with process, the complaint should be dismissed pursuant to Fed.R.Civ.P. 4(m).

### B.  THE DEFENDANT NURSES (Reed and Harvey)

The case is otherwise pending on plaintiff Green's claim that Nurses Reed and Harvey ignored his complaints of severe pain and need for supplemental medication and/or care to alleviate his discomfort.

## The Law Concerning Medical Claims
## In the Prison/Jail Context

Title 42 U.S.C., Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. <u>Harris v. Ostrout</u>, 65 F.3d 912, 917 (11 Cir. 1995); <u>Swint v. City of Wadley, Ala.</u>, 51 F.3d 988, 999 (11 Cir. 1995).

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). Whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. <u>See Estelle</u>, <u>supra</u>, at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11 Cir. 1994)).

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, <u>see</u> <u>Ancata v. Prison Health Services, Inc.</u>, 769 F.2d 700, 704 (11 Cir. 1985). In addition, officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, <u>Farrow v. West</u>, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, <u>Brown v. Hughes</u>, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

In <u>Estelle</u>, the Supreme Court reasoned that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." <u>Id.</u>, 429 U.S. at 103. Not every claim by a prisoner, asserting that he has not received adequate medical treatment, however, is sufficient to state a violation of the Eighth Amendment. <u>McElligot v. Foley</u>, 182

F.3d 1248, 1254 (11 Cir.1999). Negligence is not enough,[2] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[3] Thus, it is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. Estelle, supra; Adams v. Poag, 61 F.3d 1538 (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of

[2]    It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle, supra, 429 U.S. at 104-06; Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

[3]    Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle, supra, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim). See: Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they actually did draw that inference*. <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11 Cir. 2002). The deliberate indifference requirement is discussed further, below.

In this case, it appears that plaintiff Green was a pretrial detainee at the time of the events alleged. Of course, where an inmate was a pretrial detainee, then his claim which otherwise would have been cognizable as a claim arising under the Eighth Amendment had he been a convicted prisoner, would instead be subject to analysis under the Due Process Clause of the Fourteenth Amendment. Regardless of whether he was a pretrial detainee, or a convicted prisoner, however, the standard is the same. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567 (11 Cir. 1985)(for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment); <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11 Cir. 1996)("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.")

## The Eighth Amendment

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)); <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1362 (11 Cir. 1999); <u>see also</u> <u>Whitley v. Albers</u>, 475

U.S. 312, 327 (1986) (holding that "the Due Process Clause affords ... no greater protection").

In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) an *objective* element, a condition that inflicted unnecessary pain or suffering, Id., citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) a *subjective* element, deliberate indifference on the part of the defendant(s) to that condition, Id., citing Wilson v. Seiter, 501 U.S. 594 (1991); and 3) causation, Id., citing Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982). Both the objective and subjective elements must be satisfied. LaMarca, supra, 995 F.2d at 1535, n. 17 (citing Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Farmer, supra, 511 U.S. at 832 (quoting Rhodes, supra, 452 U.S. at 349). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley, 475 U.S. at 319; instead, "'[a]fter incarceration, only the "'unnecessary and wanton infliction of pain'"... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted))). Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required depends on the type of claim at issue. Campbell v. Sikes, supra, 169 F.3d at 1363. This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell v. Sikes, supra, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective ele-

ment required for an Eighth Amendment deprivation. <u>Campbell</u>, <u>supra</u>, 169 F.3d at 1363. The Supreme Court explained in <u>Wilson v. Seiter</u>, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of puni- tive intent is shown, <u>Wilson</u>, <u>supra</u>, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In <u>Farmer v. Brennan</u>, the Court provided further explanation of the mental state that is required for deliberate indifference, <u>Farmer</u>, <u>supra</u>, 511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health or safety; and he must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference).

As the Eleventh Circuit has noted post-<u>Farmer</u>, proof that the defendant should have perceived the risk, but did not, is insufficient. <u>Campbell</u> <u>supra</u>, at 1364 (citing <u>Farmer</u>, at 838); <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11 Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (quoting <u>Farmer</u>, <u>supra</u>, 511 U.S. at 834, 838). Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." <u>Campbell</u>, <u>supra</u>, at 1364 (citing Farmer, at 837).

## **Analysis**

In his motion for summary judgment, with supporting affidavit (DE# 57 at pp. 10-11), and his sworn Memo and statement of facts (DE# 58), and his testimony at deposition (DE# 59-2), Green states the following. He had been suffering with a knot on the bottom of his foot, which was "swollen and infected." On Wednesday, March 14,

8

2007, he complained to Nurse Rosa Gonzalez [not a named defendant], who had him fill out a sick call form and give it to Officer Krider. Green was called out the same day to see Dr. Geldart, who diagnosed him as having gout, and prescribed only "Naproxen" [correctly spelled Naprosyn; a drug used to treat pain and inflammation]. The Naprosyn was unavailable, and Green would not begin receiving it until Thursday, March 15. After seeing the doctor, Green asked for pain medication on March 14, and Nurse Carol Shaner told him that the prescription medication was not there. She responded to his complaint of pain by giving him over the counter pain medications ("Tylenol and Ibuprofen") in the interim. Nurse Shaner told Green to stay off his feet, and gave a jail officer extra doses of the non-prescription pain medication for him to give to Green later that night. Green states that he had not been prescribed antibiotics, and that his condition worsened. The swelling in his foot increased, he had greater difficulty walking, and his medications "had no effect on the pain," even after administration of the Naprosyn began on March 15, twice per day [after breakfast, and dinner]. On March 15 he asked to be taken to the hospital, and was told that that decision had to be made by a doctor. The next day, Friday, March 16, he "went through the same procedure as before" and was told to stay off of his feet. On Saturday morning, March 17, Green approached Officers Kuzura and McClellan and asked that they call the medical department because he was in pain, and wanted to be seen. Green states that he showed the officers his foot; they asked what was his problem, and he responded that the Doctor said he had gout. Green states that the officers looked at his foot said it didn't look like gout, because it was swollen and infected. McClellan gave Green a medical request form, which Kuzura received from Green at about 10:00 a.m. Green states that when he told the officers his pain medication wasn't working, and that he wanted to be seen, they called the medical department and explained the situation, and Nurse Harvey said that he was too busy to come see about Green's medical condition, and made no attempt to deliver plaintiff any medical care. Officers McClellan and Kuzura, as lay persons, had perceived that it was necessary to do something, and themselves gave plaintiff Green a

bucket and ice in which to place his foot.  Green had to wait more
than 9 hours, until after 6:00 p.m. and commencement of the next
shift, in order to receive medical attention that he had requested.
At that time Nurse Carol directed that he be transferred to the
medical department/infirmary. In his sworn Memo/Statement of Facts,
without referring to a specific date or dates on the calendar,
Green states that he had "asked Defendant Reed on several occasions
about pain medicine and was denied on each account." (DE# 58, pp.5-
6). In his Affidavit, Green specifically states that one such re-
fusal by Reed occurred on the day "previous" to his Saturday, March
17 transfer by Nurse Shaner to the HCJ Infirmary. According to
Green, during this encounter [which therefore would allegedly have
occurred on Friday, March 16], Reed refused to get him anything for
the pain he was having, and said "all I want to do is get high."
Green states that again, on the following Sunday [March 18, 2007,
while he was in the Infirmary], he complained to Green that he was
in too much pain, and needed relief, but she refused to help,
stating that he had just had just gotten his prescribed medication
some four hours before. (DE# 57 at pp. 10-11).

In the transcript of Green's deposition (Defendants' Ex. A),
Green acknowledged that between the 15th and the 17th he was re-
ceiving pain medication twice per day, as prescribed by the doctor.
(Id. T/10, 14).  Although Green could not recall the exact dates,
he testified that Reed ignored his complaints that he was in pain
on three occasions. Once was when he was still "in population"
[i.e., prior to his transfer to the Infirmary on Saturday evening,
3/17], and two times were after he was in the Infirmary. (Id.,
T/14). As he has stated in sworn documents at summary judgment,
Green testified at deposition that Reed refused one request,
stating that all he and other inmates want to do is "get high off
of the meds." (T/26-27); and testified that Reed at the infirmary
ignored his plea that his pain medication wasn't working, saying "I
can't give you no more medicine and you're just going to have to
deal with it." (T/11). Green testified that when Reed said this he
told her his foot was hot and swollen, and so painful that he
couldn't move it or let anything touch it. She responded that she

10

wouldn't give him anything for relief because he had just had his prescribed medication [the Naprosyn] about 4 hours earlier. This was early morning. (T/12). Green testified that even though Nurse Carole had been able to give him non-prescription pain medications in between the twice-a-day Naprosyn doses, Reed refused him anything (T/12-14). Green testified that he periodically rang his bell throughout the day, and was told by the jail officer to stop ringing the bell because the nurses were busy. (T/11-12).

Defendants' exhibits include excerpts from Green's medical chart for the period in question. Nursing care notes (Ex.E at DE# 59-6) indicate that on Thursday, 3/15/07, in connection with the gout diagnosis, blood work was drawn from Green and sent to a lab; and that on Saturday, 3/17/07, results of the labwork (including a uric acid test) were received.  The notes further indicate that on 3/17 at 6:30 p.m. (18:30) Green's foot was clearly infected. (See chart entry: "I/m [inmate's] RT [right] foot draining from bot of foot - raised pus area - swollen - very painful to touch - brought to medical department until next S/C [sick call] for eval[uation] - Soaking Rt foot in warm Epsom Salts."  A half hour after that 3/17 entry, an entry was made showing that Green was prescribed 750 mg of the antibiotic Keflex BID [twice daily] for 10 days, but was to be given the Keflex 500 mg TID [three times daily] "until 750 mg comes in or available."  The next Nursing Care chart entry was more than 28 hours later, on Sunday 3/18 at 11:45 p.m. (23:45) indicating that Green was seen "lying in bed [with] foot elevated on pillow No complaints @ present." The Nursing Notes show that less than 4 hours later (3/19/07 at 03:30 a.m.) Green was in pain and requested medication. The duty Nurse noted that she gave Green his prescribed morning doses of antibiotic and pain medication some 3-4 hours early, writing: "I gave I/M [inmate] a.m. med Keflex & Naprosyn."  Seven and a half hours after that, at 11:00 a.m., a Nursing Notes entry indicated that an appointment was being made for Green to see Dr. Leupscher at 1:30 p.m. (13:30). Further entries indicated that Green was returned to the jail at about 2:30 p.m. (14:30), and that at 4:00 p.m. (16:00) Dr. Leupsher informed jail officials that she wanted Green admitted to the hospital for

surgery. The Nursing Chart entries also indicate that the surgery was performed on 3/21, and that Green was returned to the Highlands County Jail in the evening of 3/25. (Nursing Notes, Ex.E).

Dr. Luepschen's examination report (Ex.G, at DE# 59-8) indicates that when she saw Green on 3/19, he related that his condition had begun weeks before, that it worsened and became severely painful, and that pressure aggravated it. She also noted that Green said he had picked or cut at a blister on the bottom of his foot (Id.). [At deposition, DE# 59-2, Green denies having said to the doctor that he did so]. After her 3/19 physical exam of Green, Dr. Leupschen wrote: "A infected wound is noted on the plantar aspect of the ball of foot on the right. The wound margins appear macerated and inflammed. There is erythema [redness resulting from inflammation] surrounding the area and in plantar arch. There is purulent [pus] drainage noted. The wound has a foul odor." (Ex.G, DE# 59-8 at p.1). Dr. Leupschen's assessment was that Green had cellulitis, and an abscess on his right foot. (Id., at p.2). The Course of action was: hospitalization for IV antibiotics, Incision and Drainage of the right foot, followed by application of sterile dressings. (Ex.G, Leupschen Report). The Microbiology report for the culture of the wound was positive for Staphylococcus aureus or MRSA (Ex.I, DE#59-10).

The defendant nurses, Reed and Harvey, state as follows in their respective Affidavits (Ex.J, at DE#59-11; Ex.K at DE#s 59-12, 60-2) which were executed nearly 1½ years after the events alleged.

Reed, who is a Registered Nurse employed with the Highlands County Sheriff's Office to work at the HCJ, has no independent recollection of being asked by inmate Green for medical treatment and pain medication for his foot injury, as alleged. (Ex.J).  Nor does Reed have any recollection of examining Reed's foot, or being aware of his foot condition or the seriousness of it. (Id.).  Reed further states that her review of the Nursing Care Notes for Green from 3/14 to 3/27/07 do not contain entries indicating that she had any encounters with Green until March 27, 2007, when she was

assigned to remove a PICC Line [Peripherally Inserted Central Catheter], a catheter inserted through an arm vein for purpose of infusing antibiotics and other fluids, that was left in place for use after Green's release from the hospital. Nurse Reed states that "if Green had asked for additional pain medication as he alleges, such a request would have been documented in his medical chart. There is no such notation made by me in his medical chart." Reed further states that Green's chart shows he was receiving Naprosyn prescribed by Dr. Geladart twice a day, starting March 15, 2007. (Ex.J, Reed Affidavit).

Harvey, who is a Licensed Practical Nurse employed with the Highlands County Sheriff's Office to work at the HCJ, states in his Affidavit (Ex. K) that he has reviewed Green's chart with respect to the claim that he was deliberately indifferent to Green's serious medical needs on Saturday, March 17, 2007. (Id.). Harvey says that he never had any "face to face encounters" with Green on Saturday, March 17, 2007, or on any other day; and moreover did not see Green's foot. (Id.). He states that he therefore had no subjective knowledge of Green's foot condition. Harvey also states that he has no independent recollection of being contacted by the officer on duty in Green's Unit on March 17, 2007, advising him of Green's foot condition, and requesting immediate medical attention. (Id.). Harvey further states, however, that if he was in fact contacted by the duty officer as alleged by Green, "it is not unusual that I may have advised that I was too busy at the time, and that I would see Green later in the day." (Id.). In so stating, Harvey explains that March 17 fell on a Saturday, when he was the only nurse on duty, and was "responsible for observing inmates housed in the infirmary, responding to emergency calls, and to administer medications to inmates throughout the jail." (Id.). Harvey also states that if he had evaluated Green's foot condition, and made a decision to house him in the infirmary, he, as a nurse, would not have been able to give Mr. Green a different treatment than that which was prescribed by Dr. Geldart, without further orders from the doctor or the physician's assistant." (Id.).

Reed's and Harvey's statements in their affidavits (Defendants' Exhibits J and K) stand in contrast to plaintiff Green's statements found in his deposition transcript (Defendants' Exhibit A, at DE# 59-2), Green's Affidavit (DE#57 at pp. 10-11), and Green's sworn Memorandum/Statement of Facts (DE# 58).

As noted, _supra_, Courts have held that the suffering of severe pain, if only for a period of hours, can itself qualify as a serious medical condition, even when the pain results from a non-life-threatening underlying condition or injury [e.g., a broken foot bone], and that the deliberate indifference standard may be met in instances where there is intentional, unexplained delay in providing to access treatment. See Brown, _supra_, 894 F.2d at 1538; McElliott, _supra_, 182 F.3d at 1255 (deliberate indifference standard met if it is shown that official failed or refused to provide care, delayed care "even for a period of hours," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all"). See also: Hill, _supra_, 40 F.3d at 1187 (delayed access to medical care can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain); Woodruff v. Holmes, No. CV407-174, 2008 WL 416930 at *2 (Feb. 13, 2008, S.D.Ga.) ("allowing a prisoner or detainee to suffer extreme pain for a prolonged period qualifies as a 'serious' medical problem, even if the source of the pain is a relatively minor condition").

Although Defendant Reed states that if she had spoken with inmate Green about his medical needs she would have made a medical chart entry, it is not clear from the record that all verbal requests by inmates to nursing staff, or even all affirmative contacts between nursing staff and inmates are charted in the Nursing Care Notes. (If it were so that every inmate request and nurse contact was required to be and in fact was charted, then the previously noted absence of chart entries between 19:00 [7 p.m.] on 3/17, and 23:45 [11:45 p.m.] on 3/18, would mean there was no nursing contact with inmate Green or nursing care provided to him for more than 28 hours. This seems unlikely, since at 6:30 p.m. on 3/17 a

14

nurse had found Greens' foot to be infected [draining, swollen, painful], transferred him to the medical unit, soaked it in a warm Epsom Salt solution, and made a call to the Physician's Assistant who by 7:00 p.m. on 3/17 prescribed the antibiotic Keflex).

Green's evidence indicates that he had face-to-face conversa-tions with Nurse Reed, that he told her his foot was swollen and infected, that even to jail officers as lay persons it was apparent the foot was infected, that he (Green) told Nurse Reed he was in great pain which his prescribed medication (Naprosyn given twice per day) was not alleviating, that nursing staff had some flexibility in administering pain medication (sometimes giving prescribed medication earlier than the scheduled time, and other times providing non-prescription pain medication in between the BID [twice daily] doses of prescription pain pills).

Thus, as to the complaint against Nurse Reed, there clearly exist genuine issues of material fact regarding: 1) whether all nursing contacts, including complaints/requests from inmates are charted in the Nursing Care Notes; 2) the nature and extent of any contact or contacts that Nurse Reed had with inmate/plaintiff Green between March 14 and the March 21 Surgery; and 3) the nature and extent of Green's condition at the time of the alleged contacts, including whether Green was in extreme pain not alleviated by prescribed medication, as he claims that he told Reed.

Similarly, the plaintiff Green's evidence indicates that on Saturday morning, 3/17/07, he was in such pain, and his foot was so obviously infected, that jail officers [whom Green states called Nurse Harvey to say that Green needed pain medication or to be seen] perceived as lay persons, in the face of Nurse Harvey's alleged refusal to attend to Green, that it was necessary for them to attempt give Green relief from his pain. This they allegedly did by giving Green a mop bucket with ice, into which he could place his foot. Harvey states in his affidavit that it would not be unusual for him to say he was too busy to respond to such a call by officers from a general population unit if he was on duty alone on

a Saturday, and occupied with inmates in the infirmary, responding to emergency calls, and delivering medication to inmates who were not in the infirmary but located throughout the jail.

If Green's evidence is credited in the light most favorable to him, as is appropriate here when considering the defendant's cross-motion for summary judgment, it must presumed for purposes of this Report that Nurse Harvey was made aware by the guards of Green's request and the nature of his medical need. In this case, Harvey states that if he received such a call from the officers, he might have said that he was too busy, and that he would attend to Green later in the day.  Here, however, Green's evidence is that Harvey said he would not come and did nothing, and that he (Green) had to continue suffering for hours until the nurse on the Saturday evening shift came on duty, quickly determined his condition needed immediate care, transferred him to the infirmary, soaked his foot, and within ½ hour made a call to the Physician's Assistant and obtained an additional prescription for an antibiotic.

Here, in light of defendant Harvey's Affidavit, and the medical record available for the Court's consideration, there also exist genuine issues of material fact with regard to the claim against him. These include: 1) the nature and extent of any telephonic contact(s) the jail officers Kazura and McClellan may have had with Harvey on the morning of Saturday, March 17, 2007, concerning inmate Green's condition; 2) the nature and extent of Green's condition at the time of the alleged contact, including whether the foot clearly appeared to be infected, whether Green was in extreme pain not alleviated by prescribed medication, and wether this was communicated to Harvey, as is claimed by the plaintiff.

In this case, resolution of the issues and facts in dispute, based upon the Medical documentation of record, and the plaintiff's and defendants' sworn documents, would require the Court to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in its opinion in Anderson v. Liberty Lobby, Inc., supra, "Credibility determinations, the weighing of

16

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, <u>supra</u>, 477 U.S. at 255 (citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).

The existence of genuine issues of material fact precludes summary judgment. <u>Celotex Corp. v. Catrett</u>, <u>supra</u>. It cannot be said at this juncture that the complaint amounts to a mere difference of opinion between an inmate/patient and prison medical staff, or negligence or malpractice cognizable only under state law, <u>see</u> <u>Estelle v. Gamble</u>, <u>supra</u>, or conversely that the defendant Nurses were deliberately indifferent to Green's serious medical needs. It therefore cannot be said that based on his motion, that the plaintiff Green is entitled to summary judgment in his favor, or that based on their joint cross-motion for summary judgment that the defendant Nurses are entitled to summary disposition of the complaint in their favor and qualified immunity.[4]

---

[4]     Qualified immunity, under appropriate circumstances, serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11 Cir. 2002); <u>Flores v. Satz</u>, 137 F.3d 1275 (11 Cir. 1998); <u>Foy v. Holston</u>, 94 F.3d 1528 (11 Cir. 1996).

Once the qualified immunity defense is raised by a defendant, the plaintiff bears the burden of showing that the federal rights allegedly violated were clearly established. <u>Foy</u>, <u>supra</u>, at 1532. The test for courts to use in determining whether an official is protected by qualified immunity is whether the official's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Smith v. Mattox</u>, 127 F.3d 1416, 1419 (11 Cir.1997)(quoting <u>Harlow v. Fitzgerald</u>, <u>supra</u>, 457 U.S. at 818)). Here, the defendant Nurses, employed with the county jail, who were acting within their discretionary authority, invoked the qualified immunity defense. Taking his allegations, and sworn statements, as true, for purposes of the defendants' cross-motion for summary judgment that is before the Court, the plaintiff has alleged that he had a badly infected foot and was in severe pain. For purposes of the motions before the Court, and this report, that is deemed sufficient to show that he had a serious medical condition, and that his unremitting pain in and of itself qualifies as a serious medical need. need. It was clearly established under the law at the time of the events alleged, that both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to an inmate's serious medical needs, which may be shown by unexplained or deliberate delay in

## IV.   <u>CONCLUSION</u>

For the above stated reasons it is therefore recommended that: 1) as for unnamed defendants who have not been served with process, the complaint be dismissed pursuant to <u>Fed.R.Civ.P.</u> 4(m); 2) the plaintiff's motion for summary judgment (DE# 57) be denied; 3) the joint motion for summary judgment by the defendants Reed and Harvey (DE# 59) be denied; and 4) the case remain pending against the defendants Reed and Harvey on the claim that the plaintiff requested care for pain and his requests were ignored.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: October, <u>22</u>nd 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Jimmy Green, <u>Pro Se</u>
     DC# H22117
     Columbia Correctional Institution
     216 S.E. Corrections Way
     Lake City, FL 32025-2013

     Adriana Mihaela Jisa
     Purdy, Jolly, Giuffreda & Barranco, P.A.
     2455 East Sunrise Blvd., Suite 1216
     Fort Lauderdale, FL 33304

---

providing care for a painful condition.  Here, due to the existence of genuine issues of material fact, it cannot be determined from the record whether the defendant Nurses are entitled to qualified immunity.